IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD C. STEELE, JR.                    Case No. 6:13-cv-02286-MA

                Plaintiff,                    OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

KATHRYN TASSINARI
BRENT WELLS
474 Willamette St., Suite 200
Eugene, OR 97401

    Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

SARAH L. MARTIN
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Edward C. Steele, Jr., seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I reverse and remand for further administrative proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on July 26, 2010, alleging disability beginning February 17, 2010, due to depression, post traumatic stress disorder (PTSD), pain disorder, varicocele and chronic epididymitis, pnuemonia with empyema, and enuresis.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on August 16, 2012, at which plaintiff appeared with his attorney and testified. A vocational expert, Jeffrey F. Tittlefitz, also appeared at the January 5, 2012 hearing and testified. On September 13, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and

therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1979, plaintiff was 33 years old on the date of the ALJ's adverse decision.  Plaintiff has a high school diploma and past relevant work as a feeder.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2012.  A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.  42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe

impairments: varicole/chronic epididymitis; pneumonia with empyema status post surgery; enuresis; depression; pain disorder; PTSD; methamphetamine dependence in remission; and cannabis dependence. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform less than a full range of light work with lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking about six hours of an eight hour workday and sitting about six hours of an eight hour workday; he can use the non-dominant right upper extremity for assist only during lifting due to residuals of chest surgery; he can understand, remember and carry out simple instructions that can be learned in 30 days or less with occasional supervisor and coworker contact and no group tasks, or public contact; he can perform low stress work with only occasional changes in the work setting and occasional decision making; he should work with objects and not data or people and with verbal rather than written instructions; he cannot perform written record keeping.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in

the national economy that plaintiff can perform, such as a packing line worker, small products assembler, or electronics worker. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from February 17, 2010, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate his testimony; (2) the ALJ failed to properly evaluate the opinions of treating physician Robert Vandiver, M.D., and examining physician Gale Smolen, M.D.; and (3) the ALJ failed to meet his burden that plaintiff can perform other work in the national economy.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision

must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the August 16, 2012 hearing, plaintiff testified that he was then 33 years old and that he lives in a shed on his grandmother's property. Plaintiff testified that he has a high school diploma, but can only read and write at the fifth or sixth grade level. Tr. 39.

Plaintiff testified that he has chronic pain due to an injury to his left testicle in February 2010. Tr. 42. Plaintiff also described that the pain interrupts his sleep and that he wakes with neck pain. Plaintiff further testified that he has incontinence issues. Tr. 43. Plaintiff stated that he is comfortable standing for about an hour, then needs to sit down due to pain in his testicle, which spreads to his back, legs, and feet. Tr. 42. Plaintiff estimated that he could sit for 30 minutes. Tr. 52. Plaintiff testified he has difficulty with fine motor activities,

and cannot use a hammer or screwdriver. Plaintiff stated that he prefers to work alone or in small groups, and has no difficulties with supervisors. Tr. 47. Plaintiff also testified that he hikes three to four times a week, two miles each time with a 15-pound pack, and can lift 25 pounds on his left side and five pounds on the right. Tr. 51.

Plaintiff testified that he suffers anxiety, for which he is taking medication, and that he feels it is helping. Tr. 45, 50. Plaintiff testified that he formerly lived with his girlfriend, their daughter, and the girlfriend's son, until he attempted suicide in September 2011. Plaintiff testified that he watches his daughter and his girlfriend's son when he can, with help from his mother. Plaintiff testified that he is unable to lift the children, and that he gets agitated when they cry. Plaintiff testified that he has an anger issues, and that he becomes rude and disrespectful. Tr. 58.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms do not establish an inability to sustain full time work activity. The ALJ discounted plaintiff's credibility because his alleged limitations were inconsistent with his physical activities and his hearing testimony, and objective medical evidence did not support the

extent of his allegations.  Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount his credibility. I disagree.

First, the ALJ identified multiple inconsistencies between plaintiff's hearing testimony and his alleged limitations. Inconsistencies between a claimant's hearing testimony and his alleged limitations is an appropriate basis upon which to discount a claimant.  *Tomasetti,* 533 F.3d at 1039 (ALJ may appropriately discredit claimant based on inconsistent statements about symptoms, abilities).

In the decision, the ALJ noted that plaintiff inconsistently asserted that he was unable to sustain full time work due to his pain, yet at the hearing, he testified that he wanted to work, but could not get hired.  Tr. 16, 45.  Furthermore, the ALJ accurately noted, plaintiff acknowledged that he does not have a driver's license, but admitted that he drove himself to hearing.  Tr. 38. The ALJ also found plaintiff's allegation in his August 12, 2010 Function Report that he could not ride in the car for more than five minutes was inconsistent with his ability to drive himself from his home in Lebanon, Oregon to his disability hearing in Eugene, Oregon — a distance of 45 miles.  Tr. 16, 38, 56, 205.  The ALJ's findings are wholly supported by substantial evidence, and the ALJ appropriately discounted plaintiff's credibility on this basis.

Second, the ALJ discussed inconsistencies between plaintiff's alleged physical limitations and his hearing testimony. As the ALJ indicated, in the August 12, 2010 Function Report, plaintiff described that any movement or vibration sends sharp pain through his testes, and that he cannot drive because pain causes him to lose concentration. Tr. 205-06. Plaintiff stated his daily activities included trying to cook, clean, perform yard work, and assist with childcare, but that he was unable to vacuum or sweep. Plaintiff also indicated he could lift five pounds and walk 10 feet. Tr. 210-12. As the ALJ noted, these limitations are inconsistent with plaintiff's hearing testimony that he was regularly hiking with a 15-pound pack, could lift 25 pounds on his right side, and could stand for an hour. Tr. 42, 48. The ALJ found that plaintiff either experienced improvement in his physical capabilities, or exaggerated his limitations, and discounted his credibility on this basis. The ALJ's findings are backed by substantial evidence in the record. Given these inconsistencies, the ALJ reasonably discredited plaintiff on this basis.

Third, the ALJ discredited plaintiff because the objective medical evidence did not support the full extent of his alleged symptoms. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)(ALJ may discredit claimant based on lack of objective support if it not the sole reason); *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)(lack of objective

10 - OPINION AND ORDER

support is an appropriate basis to discount claimant's credibility when combined with other reasons).  In the decision, the ALJ noted that several treating sources were unsure how to treat plaintiff because his complaints were out of proportion to any objective findings.  Tr. 20.  The ALJ cited treating records from plaintiff's treating physician assistant, Kate Lane, P.A.C.  Plaintiff established care with Ms. Lane in April 2010, approximately two months after his injury to his left testicle.  Plaintiff reported to Ms. Lane persistent pain in his left testicle, worse with movement.  Dr. Lane noted that an ultrasound was negative, as were other tests.  Tr. 323, 332.  The ALJ cited August 16, 2010 treatment notes from Ms. Lane showing that plaintiff had consultation with urology, and that a spermatic cord block was performed to relieve plaintiff's pain.  Tr. 301.  Ms. Lane's treatment notes show that plaintiff reported the cord block was not helpful, contrary to the dramatic improvement described by the anesthesiologists in the procedure notes.  Tr. 284, 301.  The ALJ discussed that Ms. Lane's treatment notes show that plaintiff was seeking to be excused from a JOBS program, but Ms. Lane believed plaintiff was capable of participating:  "I don't see any reason why he cannot attend this[.] I have asked that they restrict his lifting to no greater than 10 pounds."  Tr. 17, 301, 309.

The ALJ also cited to records from plaintiff's other treating physician, John Hein, M.D., showing negative objective findings

regarding plaintiff's testicular pain. In February 2011, plaintiff established care with Dr. Hein, and plaintiff continued to complain of groin pain, with testicular pain along the inguinal canal and left leg. Tr. 579. Dr. Hein noted that an ultrasound revealed a variocele on the left, but not of such a size that could explain the extent of plaintiff's pain. Dr. Hein referred plaintiff to urology, nuerology, and orthopedics, none of which could identify a cause or solution. Tr. 574-76. In August 2011, plaintiff was still complaining of pain, and Dr. Hein noted the source of the pain remained unknown. Tr. 574. Dr. Hein ordered an MRI, the results of which were unremarkable. Tr. 577. The ALJ's findings are a rational interpretation of the record, supported by substantial evidence, and thus will not be disturbed.

In short, I conclude that the above reasons, when taken together, amount to clear and convincing reasons, backed by ample record evidence, to reject plaintiff's testimony.

## II.  **Standards for Evaluating Physician's Opinions**

Plaintiff argues that the ALJ improperly discredited the opinions of treating physician Robert F. Vandiver, M.D., and examining physician Gale Smolen, M.D. Generally, more weight is given to the opinion of a physician who treats the claimant than to that of a physician who merely examines the claimant. *Carmickle,* 533 F.3d at 1164; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or

examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

### A.    Dr. Vandiver

Dr. Vandiver has been plaintiff's treating psychiatrist since September 29, 2011, following plaintiff's hospitalization after his second attempted suicide. Tr. 675. Dr. Vandiver provides medication management and supportive psychotherapy and meets with plaintiff approximately once every three months. Tr. 675. Dr. Vandiver diagnosed plaintiff with Major Depressive Disorder, Posttraumatic Stress Disorder, and Amphetamine Dependence in sustained remission. Tr. 675.

Dr. Vandiver provided a letter dated July 16, 2012, opining that plaintiff continues to experience profound pain, and that plaintiff is improving on Cymbalta. Dr. Vandiver opined that:

> I work under no illusions that [plaintiff] is free of the
> profound irritability that he continues to have. I think
> he has an extremely short fuse and would not tolerate
> being around people very well. I think also with his
> pain complaints, he probably would not tolerate coming in
> regularly to work. The irritability would keep him from
> listening to his supervisors and tolerating the behaviors
> of coworkers. Tr. 676.

The ALJ gave Dr. Vandiver's opinion that plaintiff has difficulty working near others "some weight" and incorporated that portion of

13 - OPINION AND ORDER

the opinion into the RFC by limiting plaintiff to occasional supervisor and coworker contact and no group tasks or public contact. The ALJ gave Dr. Vandiver's opinion concerning plaintiff's attendance based on his pain complaints "little weight."

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Vandiver's opinion.[1] Specifically, plaintiff maintains that the social limitations identified by Dr. Vandiver, such as plaintiff's "short fuse" and "profound irritability" exceed the limitations set forth in the RFC.

The ALJ discounted Dr. Vandiver's opinion because it was inconsistent with plaintiff's testimony, and inconsistent with Dr. Vandiver's medical records. Having carefully reviewed the record, I conclude the ALJ's reasoning falls short.

---

[1] Dr. Vandiver's opinion was contradicted by nonexamining physician Dorothy Anderson, Ph.D. On November 5, 2010, Dr. Anderson completed a Mental Residual Functioning Capacity Assessment (MRFC) in which she opined that plaintiff's understanding was not impaired, that he can remember simple instructions, but his memory for detailed instructions was moderately limited by his focus on pain. Tr. 73. Dr. Anderson also opined that plaintiff was moderately limited in his ability to maintain concentration for extended periods and to work in coordination with others or in proximately with others without being distracted by them. Dr. Anderson opined that plaintiff is capable of carrying out a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 73-74.

The ALJ accurately discussed that plaintiff testified that the Cymbalta he was taking was helping, and that despite reporting depression and anxiety in March 2010, plaintiff did not seek specific mental health treatment until September 2011, following his second attempted suicide.  Tr. 328, 600-04.  And, as the ALJ noted, plaintiff testified that he wanted to work, and endorsed working as a gas station attendant, which is inconsistent with plaintiff's alleged limitations.  Tr. 45-46.  Additionally, Dr. Vandiver's opinion that plaintiff cannot work around people is inconsistent with plaintiff's testimony he does not have difficulty working with supervisors and can work near five or six people.  Tr. 46-47.  Thus, the ALJ's finding that Dr. Vandiver's opinion is inconsistent with plaintiff's testimony is supported by substantial evidence, and the ALJ could discount Dr. Vandiver's opinion on this basis.  *See Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989)(ALJ may reject a treating physician's opinion where it conflicts with other objective evidence, testimony from claimant, or other conflicting evidence); *see also Ghanim*, 763 F.3d at 1162 (ALJ appropriately may discount treating physician opinion based on claimant's properly discounted self-reports).

However, the ALJ's second reason is not supported by substantial evidence.  Contrary to the ALJ's finding, Dr. Vandiver's treatment notes are consistent with his opinion. Indeed, Dr. Vandiver repeatedly expressed that plaintiff has

irritability, anger, and "an edge." Tr. 472, 480-81, 483. To be sure, the ALJ's the ALJ's minimal discussion of plaintiff's mental health belies the seriousness of plaintiff's anger and irritability issues demonstrated in the overall medical record, which are consistent with Dr. Vandiver's opinion. On September 8, 2011, plaintiff attempted suicide with a polysubstance overdose by swallowing pills in front of his girlfriend when she threatened to end their relationship. Tr. 410. In the emergency room, plaintiff had to be restrained, subdued, and intubated. Tr. 410. While in the hospital, he suffered multiple seizures, and ultimately was discharged four days later, to be followed on an outpatient basis. Tr. 413. Yet, on September 19, 2011, during an appointment with Dr. Hein, plaintiff appeared hostile, angry and agitated, and stated that he intended to overdose with a stockpile of medications. Tr. 571-72. Dr. Hein arranged for police to bring plaintiff to the hospital, where plaintiff was admitted to the inpatient mental health unit for approximately nine days. Tr. 598-99.

On March 31, 2012, plaintiff again went to the emergency room complaining of suicidal ideation, and reported that he wanted to end his life and made a superficial cut to his wrist. Tr. 539. Linn County Mental Health evaluated plaintiff and made arrangements for him to stay in a hotel until he could meet with his case worker. Tr. 540. Therefore, based on my careful review, I

16 - OPINION AND ORDER

conclude that the ALJ's second reason for discounting Dr. Vandiver's opinion is not supported by substantial evidence as whole. *Garrison*, 759 F.3d at 1012 (ALJ must provide a thorough summary of facts and conflicting evidence, stating interpretation, and making findings in order to satisfy substantial evidence standard). I also conclude that the ALJ's first reason, inconsistency with plaintiff's testimony, standing alone, is not a specific and legitimate reason to discount the opinion of treating physician Dr. Vandiver on the record before me. Accordingly, the ALJ has erred.

### B.   Dr. Smolen

Dr. Smolen conducted a psychiatric evaluation of plaintiff on October 8, 2010. Tr. 386. During that evaluation, plaintiff reported to Dr. Smolen that in 2005 or 2006, he tried to kill himself and his former girlfriend, used methamphetamine from ages 16 to 23, but has since been clean and sober. Plaintiff also reported domestic violence issues, that he is in constant pain, is depressed, and has difficulty sleeping. Tr. 386-88. Dr. Smolen's report shows that plaintiff reported using less pain medication when he uses medical marijuana. Dr. Smolen diagnosed plaintiff with Post Traumatic Stress Disorder, Pain Disorder, Methamphetamine Dependence in Remission, and Cannabis Dependence, legal use. Tr. 389. Dr. Smolen opined that plaintiff:

> is able to remember and understand with mild impairment due to distraction from pain and effects of his pain

17 - OPINION AND ORDER

medication.  I think he is able to concentrate and attend with mild impairment due to same.  I do not think he would be able to get along well with people on a mental basis.

Tr. 389.

The ALJ gave Dr. Smolen's opinion "significant weight" and incorporated her limitations with respect to social limitations into the RFC by limiting plaintiff to "no public contact, only occasional coworker and supervisor contact and perform no group tasks."  Tr. 17-18.

Plaintiff argues that the Dr. Smolen's opinion that plaintiff "does not get along well with people on a mental basis" is consistent with Dr. Vandiver's opinion that plaintiff has profound irritability and prevents him from listening to supervisors.  I disagree.  Dr. Smolen did not express an opinion about the severity of plaintiff's ability to interact with coworkers or supervisors but generally assessed mild limitations.  Dr. Smolen opined that plaintiff had mild impairments with remembering and understanding instructions and mild impairments with concentration, persistence and pace due to distractions from his pain and effects from his pain medication.  Tr. 389.  Therefore, Dr. Smolen's limitations are not entirely consistent with those expressed by Dr. Vandiver.

Having carefully reviewed Dr. Smolen's opinion, I conclude that the ALJ adequately translated Dr. Smolen's opinion into specific functional limitations.  However, I note that Dr. Smolen's opinion pre-dates the opinion of Dr. Vandiver and plaintiff's 2011

18 - OPINION AND ORDER

and 2012 suicide attempts.  Thus, I conclude that the ALJ erred in failing to adequately resolve the conflicting opinions of Drs. Vandiver and Smolen in light of plaintiff's suicide attempts and resulting hospitalizations.

In summary, with respect to the ALJ's evaluation of the medical evidence pertaining to plaintiff's mental health issues, I conclude that the ALJ erred in evaluating Dr. Vandiver's opinion. Additionally, I determine that the ALJ failed to adequately resolve Dr. Vandiver's conflicting opinion of plaintiff's mental health with the earlier opinions of Drs. Smolen and Anderson on the record before me.   Therefore, I conclude the ALJ's evaluation of the medical evidence concerning plaintiff's mental health is not supported by substantial evidence in the record as a whole.

## III. **Remand**

After finding the ALJ erred, this court applies a three part test to determine whether the case should be remanded for further proceedings, or to calculate and award benefits.  *Garrison*, 759 F.3d at 1020; *Vasquez*, 572 F.3d at 593; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The court should grant an immediate award of benefits when these three conditions are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

19 - OPINION AND ORDER

*Garrison*, 759 F.3d at 1020.  Where, after evaluating the record as a whole, there are serious doubts that the claimant is, in fact, disabled, the court may exercise its discretion and remand the case for further administrative proceedings.  *Id.* at 1021; *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

In this case, it is not clear that the ALJ would be required to find plaintiff disabled on remand.  As noted, the ALJ erred in evaluating Dr. Vandiver's opinion and resolving the conflicting medical evidence pertaining to plaintiff's mental health issues. Indeed, the opinion evidence upon which the ALJ relied in assessing plaintiff's mental health was rendered before his suicide attempts in 2011 and 2012.  However, viewing the record as a whole, and in light of the negative credibility determination, I have doubts as to whether plaintiff is disabled.  Plaintiff's stated physical activities are clearly in excess of his alleged limitations, and I upheld the ALJ's negative credibility determination.  Additionally, emergency room visits raise issues of potential drug-seeking or opiate dependency not discussed by the ALJ.  Tr. 401, 404, 555, 558.  Accordingly, I exercise my discretion to remand this case for further administrative proceedings, including a new psychodiagnostic evaluation to gain insight into plaintiff's mental health functioning, and a new hearing, with new vocational testimony if necessary.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _18_ day of FEBRUARY, 2015.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge

21 - OPINION AND ORDER